# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

## NO. 22-14307

_____

UNITED STATES OF AMERICA
Plaintiff-Appellee,

v.

JOHN DOE
Defendant-Appellant.

_____

A DIRECT APPEAL OF A CRIMINAL CASE
FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

_____


## INITIAL BRIEF OF APPELLANT

JEREMY LASNETSKI
Lasnetski Gihon Law
121 W. Forsyth St., Ste. 520
Jacksonville, FL 32202
Telephone: (904) 642-3332
Facsimile: (904) 685-4580
Email:jeremy@lglawflorida.com
Attorney for Appellant

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to the Eleventh Circuit Rule 26.1-1, I HEREBY CERTIFY that the following named persons are parties interested in the outcome of this case:

1. Corsmeier, Arnold, Assistant United States Attorney

2. Doe, John, defendant-appellant;

3. Handberg, Roger, United States Attorney;

4. Hoppmann, Karin, former acting United States Attorney;

5. Howard, Hon. Marcia Morales, United States District Judge;

6. Grant, Maurice, Assistant Federal Public Defender

7. Lasnetski, Jeremy, Esq.;

8. Lopez, Maria Chapa, former United States Attorney;

9. Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division;

10. Toomey, Hon. Joel, United States Magistrate Judge

No publicly traded company or corporation has an interest in the outcome of this appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The facts and legal arguments are adequately set forth in Mr. Doe's brief, and oral argument is therefore not necessary.

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS …..………………………C1 of 2

STATEMENT REGARDING ORAL ARGUMENT …………………………i

TABLE OF CONTENTS …………………………………………………..ii

TABLE OF AUTHORITIES ……………………………………………iv

STATEMENT OF JURISDICTION ………………………………………..vii

STATEMENT OF ISSUES ………………………………………………1

STATEMENT OF THE CASE ……………………………………………..2

    A.    Course of Proceedings and Disposition Below …………………2

    B.    Statement of the Facts ………………………………………...6

    C.    Standard of Review ……………………………………………11

SUMMARY OF THE ARGUMENT ………………………………………..12

ARGUMENT ………………………………………………………………..13

I.    The plain text of 8 U.S.C. §1253(a) requires the government
to prove that a defendant's removal order was outstanding by
reason of being in a "class" of deportable aliens described in
8 U.S.C. §1227(a), which requires that the alien be "admitted"
to the United States. ………………………………………………13

CONCLUSION………………………………………………………………28

CERTIFICATE OF COMPLIANCE ………………………………………...28

CERTIFICATE OF SERVICE ……………………………………….…………28

# TABLE OF AUTHORITIES

## CASES

*Bamba v. Riley,* 366 F.3d 195, 198 (3rd Cir. 2004)…………………………..25

*Bazan-Reyes v. I.N.S.,* 256 F.3d 600, 605 (7th Cir. 2001)……………………25

*Chevron U.S.A. Inc. v. NRDC Inc.*, 467 U.S. 837, 842-43 (1984)…………...27

*G.S. v. Holder,* 373 F.App'x 836, 847 (10th Cir. Apr. 15, 2010) ……………25

*Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 652 (9th Cir. 2004)…..16, 23-24

*Jennings v. Rodriguez*, 138 S.Ct. 830 (2016) ………..………………………26

*Nat'l Ass'n of Mfrs. v. DOD*, 138 S.Ct. 617, 629 (2018)……………………26

*Poveda v. United States Att'y Gen.*, 692 F.3d 1168 (11th Cir. 2012)………...15

*United States v. Chastain,* 198 F.3d 1338, 1350 (11th Cir. 1999)……………11

*United States v. DBB, Inc.,* 180 F.3d 1277, 1281 (11th Cir. 1999) …………..17

*United States v. Garcon,* 54 F.4th 1274, 1276 (11th Cir. 2022)……………...17

*United States v. Gonzalez,* 834 F.3d 1206, 1214 (11th Cir. 2016)   …………11

*United States v. Jones,* 962 F.3d 1290, 1296 (11th Cir. 2020) ………………11

*United States v. Nix*, 438 F.3d 1284 (11th Cir. 2006)………………………...17

*United States v. Sarwar*, 353 Fed. Appx. 347 (11th Cir. 2009)………...21-22

*United States v. Wright*, 607 F.3d 708, 716 (11th Cir. 2010) ………………...27

*Valdiviez-Hernandez v. Holder*, 739 F. 3d 184 (5th Cir. 2013) …………..24-26

*Zepeda v. Holder*, 446 F. App'x 562, 563 (4th Cir. Sept. 15, 2011)  …………2

# STATUTES/RULES

8 U.S.C. §1101(a)(13)(A) ..…………………………………………13

8 U.S.C. §1182 ……………………………………………………...13-16

8 U.S.C. §1182(a)............................................................... 14, 16

8 U.S.C. §1182(a)(2)   …………………………………...14-15, 20, 23

8  U.S.C. §1182(a)(6)(A) ………………………………………15

8 U.S.C. §1227  …………………………………………14, 16-18, 24

8 U.S.C. §1227(a) ………………………………1-5, 12-14, 16-22, 24, 27

8 U.S.C. §1227(a)(1) …………………………………..12, 18-19, 21

8 U.S.C. §1227(a)(1)(A) …………………………………………..19

8 U.S.C. §1227(a)(1)(E) ……………………………………….22

8 U.S.C. §1227(a)(2)………………………………………18, 21, 23

8 U.S.C. §1227(a)(2)(A)(iii)……………………………………22, 24-26

8 U.S.C. §1227(a)(2)(C) ………………………………………15, 22

8 U.S.C. §1227(a)(3)………………………………………18, 21, 23

8 U.S.C. §1227(a)(4)………………………………………………21

8 U.S.C. §1227(a)(5)…………………………………………...21

8 U.S.C. §1227(a)(6)……………………………………....12, 21

8 U.S.C. §1227(a)(2)(A)(iii) ………………………………………22, 24-26

8 U.S.C. §1228(b)………………………………………………………...24-26

8 U.S.C. §1228(b)(1) …………………………………………………………...25

8 U.S.C. §1229a(e)(2) ………………………………………………………...13

8 U.S.C. §1229b …………………...……………………………………...24-26

8 U.S.C. §1229b(b)(1)(C) …………....……………………………………23

8 U.S.C. §1253   ……………………………………………16-17, 21, 27

8 U.S.C. §1253(a)  …………….…………………1, 4, 13, 16, 18, 20-22, 24, 26-27

8 U.S.C. §1253(a)(1) …….....…………………………...2-4, 13, 16, 18, 20-21

8 U.S.C. §1253(a)(6) ………………………………………………………….4

18 U.S.C. §3231……………………………………………………………vi

18 U.S.C. §3742……………………………………………………………vi

28 U.S.C. §1291……………………………………………………………vi

28 U.S.C. §1294………………………………………………………………vi

# STATEMENT OF JURISDICTION

This is a direct appeal from the final judgment of the United States District Court, Middle District of Florida, Jacksonville Division. The district court had original jurisdiction over this criminal case pursuant to 18 U.S.C. §3231. Mr. Doe was sentenced on December 8, 2022, and the final judgment was entered on the criminal docket on December 9, 2022. Doc 141. Mr. Doe filed a timely Notice of Appeal on December 21, 2022. Doc 143. This Court has jurisdiction pursuant to 18 U.S.C. §3742 and 28 U.S.C. §§1291 and 1294. Mr. Doe is incarcerated, serving a fifty one month sentence imposed by the district court.

## STATEMENT OF THE ISSUE

Whether the term "classes" in 8 U.S.C. §1253(a) incorporates 8 U.S.C. §1227(a)'s requirement that an alien be "admitted" to the United States such that the government must prove that the alien's prior removal order was outstanding by reason of being admitted to the United States and deportable under §1227(a)'s subsections?

## STATEMENT OF THE CASE

On October 24, 2019, Mr. Doe was indicted on three counts of hampering his deportation, in violation of 8 U.S.C. §1253(a)(1). Doc. 1. On September 3, 2021, Mr. Doe filed proposed jury instructions requesting an instruction that required the jury to find that Mr. Doe's final order of removal was outstanding by reason of being a member of any class described in §1227(a), which requires the government to prove that the removal order was subsequent to his being "admitted" into the United States. Doc. 93.

Mr. Doe's proposed jury instruction #10 was a proposed instruction on the charged offense of hampering deportation. Doc. 93 at pg. 22-23. The contested portion of the proposed jury instruction read, "(2) the final order of removal was outstanding by reason of the Defendant being a member of the class of deportable aliens that includes an alien who was (a) in and admitted to the United States, and (b) at the time of the entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time…" Doc. 93 at pg. 22. Mr. Doe's proposed jury instruction defined ""[a]dmission" and "admitted" as the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." Doc. 93 at pg. 23.

On September 7, 2021, Mr. Doe filed a memorandum in support of proposed jury instructions. Doc. 98. Mr. Doe argued that when a defendant is charged under 8 U.S.C. §1253(a)(1), the government has the burden to prove that the defendant's order of removal was outstanding by reason of being a member of a class described in §1227(a), and because each class listed in §1227(a) requires that a defendant be "admitted" to the United States, the government must prove that Mr. Doe's removal order was subsequent to his "admission" to the United States. Doc. 98 at pg. 1. The government filed a response on September 7, 2021 objecting to Mr. Doe's interpretation of the statute. Doc. 99.

On December 8, 2021, the district court held a hearing on this issue. Doc. 157. At the hearing, the district court looked at the specific provision in §1253(a)(1) which applies the statute to, "[a]ny alien against whom a final order of removal is outstanding by reason of being a member of any of the classes described in section 1227(a)..." Doc. 157 at pg. 3. The district court noted that §1227(a) has introductory language that begins with, "[a]ny alien…in and admitted to the United States." Doc. 157 at pg. 3. The district court then held that the term "classes" in 8 U.S.C. §1253(a)(1) referred to each subsection within 8 U.S.C. §1227(a) without inclusion of the introductory

paragraph language "in and admitted." Doc. 157 at pg. 4. The district court

held that §1253(a) only incorporated the language within each subsection of

§1253(a)(1) through §1253(a)(6). *Id.*

Mr. Doe argued that the term "admitted" was incorporated into each of

the §1227(a) classes and that a person could not be a member of any of the

classes listed in 8 U.S.C. §1227(a) unless "admitted" into the United States.

Doc. 157 at pg. 5. The district court declined to give Mr. Doe's proposed jury

instruction requiring the government to prove that Mr. Doe had been

"admitted" to the United States prior to the issuance of the removal order.

Doc. 157 at pg. 18.

On February 14, 2022, Mr. Doe proceeded to trial and at the close of the

government's case, Mr. Doe objected to the district judge's denial of Mr.

Doe's proposed jury instruction on the hampering charge. Doc. 152 at pg. 74.

Mr. Doe then moved for a Rule 29 judgment of acquittal arguing that the

government failed to prove that Mr. Doe's order of removal was outstanding

by reason of being a member of a class described in 8 U.S.C. §1227(a)

because the government provided no evidence that Mr. Doe had been

"admitted" to the United States as is required to be a member of any class

under §1227(a). Doc. 152 at pg. 81. The district court denied the motion. Doc. 152 at pg. 86.

The district court then instructed the jury on the law stating that "[a]n alien is a "member of any of the classes described in Section 1227(a) of Title 8 of the United States Code" if the alien was, at the time of his entry into the United States, inadmissible under the law. Doc. 152 at pg. 94. The district court further instructed the jury that an alien is "inadmissible" under the law if he enters the United States illegally without being inspected and authorized by an immigration officer." Doc. 152 at pg. 94.

Mr. Doe was found guilty of all three counts by a jury. Doc. 125. On December 8, 2022, Mr. Doe was sentenced to fifty one months in prison. Doc. 141. Mr. Doe is currently incarcerated.

## STATEMENT OF FACTS

On October 24, 2019, John Doe was indicted on three counts of hampering his deportation.  Doc. 1.  The government alleged that on three separate occasions, Mr. Doe willfully failed and refused to make timely application in good faith for travel and other documents necessary to his departure from the United States and willfully took action designed to prevent and hamper, and with the purpose of preventing and hampering, his departure. Doc. 1. Count I charged Mr. Doe with hampering his deportation on April 17, 2019.  Doc. 1. Count II charged Mr. Doe with hampering his deportation on June 20, 2019. Doc. 1. Count III charged Mr. Doe with hampering his deportation on June 23, 2019.  Doc. 1.

On September 2, 2020, the magistrate court held an evidentiary hearing on a suppression hearing and the facts were uncontested. Doc. 60.  At the hearing, Deportation Officer Kenneth Keaton testified to his interaction with Mr. Doe and to the contents of Mr. Doe's Alien file.  Doc. 60.   Officer Keaton testified that the Alien file indicated that the first interaction with Mr. Doe was on January 6th, 1985. Doc. 60. at pg. 8.  On that date, Mr. Doe stated that his name was Freddie Davis and he was a United States citizen.  Doc. 60 at pg. 9. Mr. Doe was subsequently deported to Jamaica.  Doc. 60 at pg. 9.

Two weeks later, Mr. Doe was encountered by immigration authorities and claimed that his name was Joseph Gorden.  Doc. 60 at pg. 9. Mr. Doe presented a Bahamian passport with an altered picture in the passport. Doc. 60 at pg. 10.  Mr. Doe was again deported to Jamaica.  Doc. 60 at pg. 10. Officer Keaton continued to testify that Mr. Doe's alien file indicated that Mr. Doe had been encountered by various law enforcement agencies over the course of the next several years and he provided various names including Freddie Lee Davis, Noel Jones, Ricardo Jones and Dave Davis.  Doc. 60 at pgs. 10-11.

Officer Keaton testified that, according to the alien file, Mr. Doe was encountered in 1988 by INS officials in Dallas and Mr. Doe claimed to be a U.S. citizen from the U.S. Virgin Islands.  Doc. 60 at pg. 11.  In June 2018, Mr. Doe came into ICE custody and claimed to be a U.S. citizen from the U.S. Virgin Islands.  Doc. 60 at pg 11.

Subsequent to June 2018, immigration officials attempted to deport Mr. Doe back to Jamaica, but the Jamaican consulate wanted more information. Doc. 60 at pg. 16. In January 2019, Mr. Doe was transferred to the Baker County Detention Facility.  Doc. 60 at pg. 17.  According to Officer Keaton's reading of the alien file, a deportation officer scheduled an interview for Mr. Doe to speak with the Jamaican consulate and initially Mr. Doe refused.  Doc.

60 at pg. 18.  Mr. Doe told the deportation officer that his name was Ricardo Jones.  Doc. 60 at 19.

The Jamaican consulate requested additional fingerprints and Mr. Doe initially refused, but then agreed when told that the Jamaican consulate needed them.  Doc. 60 at pg. 19.  Officer Keaton became the case agent in March 2019 and testified at the suppression hearing that the Jamaican consulate stated that Mr. Doe claimed his name was Ricardo Jones and that he was from the U.S. Virgin Islands.  Doc. 60 at pg. 22.  The Jamaican consulate denied a travel document for lack of conclusive evidence that Mr. Doe was from Jamaica.  Doc. 60 at pg. 22 and 23.

On March 14, 2019, according to Officer Keaton, Mr. Doe refused to provide any biographical information because Mr. Doe stated that Officer Keaton already had his information.  Doc. 60 at pg. 24.  On April 9th, 2019, Mr. Doe told Officer Keaton that his name was Freddie Davis.  Doc. 60 at pg. 40.  On April 17, 2019, Mr. Doe told Officer Keaton and the Jamaican consulate via telephone that his name was Ricardo Jones and his birth date was July 25, 1963. Doc. 60 at pgs. 26 and 45.

On June 20th, 2019, the conversation between Mr. Doe and Officer Keaton was recorded.  Doc. 60 at pg. 28.  Mr. Doe asked to speak to an

attorney 18 times during that interview.  Doc. 60 at pg. 45. Mr. Doe told

Officer Keaton that he didn't understand what was going on and he wanted an

attorney to explain it to him.  Doc. 60 at pg. 46.  Agent Ordon, another

deportation officer who was present, told Mr. Doe that if Mr. Doe didn't

answer questions, it could move into a criminal case against him.  Doc. 60 at

pg. 46.   By the end of the interview, Mr. Doe stated that his name was Freddie

Davis and he admitted to using several different names in the past.  Doc. 60 at

pg. 47. Officer Keaton believed that Mr. Doe's prior statement on April 17th,

2019 stating that his name was Ricardo Jones was a false statement to a

federal agent.  Doc. 60 at pg. 47.

On June 28, 2019, deportation officers issued Mr. Doe a document

warning Mr. Doe of the consequences of failing to comply which stated,

"[y]ou can refuse to answer only if a truthful answer will incriminate you."

Doc. 60 at pg. 48.  On July 23, 2019, deportation officers again interviewed

Mr. Doe, who requested an attorney on 14 separate occasions during this

interview.  Doc. 60 at pg. 48 and 49.  Mr. Doe stated that his name was

Freddie Davis.  Doc. 60 at pg. 49.  This conversation was also recorded. Doc.

60 at pg. 30.

Mr. Doe proceeded to trial and the government presented no evidence that Mr. Doe had ever been "admitted" to the United States.  The jury returned a verdict of guilty as to all three counts.  Doc. 152 at pg. 139.  Mr. Doe was sentenced to fifty one months on December 8, 2022. Doc. 154 at pg. 33.

# **STANDARD OF REVIEW**

The standard of review to determine whether a district court erred in denying a Rule 29 motion for judgment of acquittal is de novo. *United States v. Gonzalez*, 834 F.3d 1206, 1214 (11th Cir. 2016). The standard of review to determine questions of statutory interpretation is de novo. *United States v. Jones*, 962 F.3d 1290, 1296 (11th Cir. 2020). The standard of review to determine whether the district court erred in refusing to give a jury instruction is abuse of discretion. *United States v. Chastain*, 198 F.3d 1338, 1350 (11th Cir. 1999).

## SUMMARY OF THE ARGUMENT

8 U.S.C. §1253(a)(1) requires the government to prove that there is a final order of removal outstanding against the defendant by reason of being a member of any of the classes described in §1227(a). In order to be a member of any of the classes described in §1227(a)(1) through §1227(a)(6) , an alien must have been "admitted" to the United States as is required under §1227(a). The government failed to present any evidence that Mr. Doe's final order of removal was outstanding subsequent to his "admission," and therefore, the district court erred in denying Mr. Doe's Rule 29 motion for judgment of acquittal. The district court also erred by denying Mr. Doe's requested jury instruction requiring the government to prove that Mr. Doe was "admitted" to the United States.

# ARGUMENT

**The plain text of 8 U.S.C. §1253(a) requires the government to prove that a defendant's removal order was outstanding by reason of being in a "class" of deportable aliens described in 8 U.S.C. §1227(a), which requires that the alien be "admitted" to the United States.**

8 U.S.C. §1253(a)(1) criminalizes the hampering of one's deportation when that alien has *a final order of removal outstanding by reason of being a member of any of the classes described in §1227(a)*.  8 U.S.C. §1253(a)(1) [emphasis added]. §1227(a) is entitled "Classes of Deportable Aliens" and includes only aliens who have been "admitted" to the United States.  8 U.S.C. §1227(a)  The government failed to prove that Mr. Doe was a member of a class that was "admitted" to the United States, therefore the district court erred by denying Mr. Doe's Rule 29 Motion for Judgment of Acquittal.   The district court further erred by denying Mr. Doe's requested jury instruction on the hampering charge which would have required the jury to find that Mr. Doe's removal order was subsequent to his "admission."

The term "admission" is defined in §1101(a)(13)(A) as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.  The term "removable" is defined in 8 U.S.C. §1229a(e)(2) as "(A) in the case of an alien not admitted to the United States, that the alien is *inadmissible* under section 1182 of this title, or (B) in the case

of an alien admitted to the United States, that the alien is *deportable* under

section 1227 of this title." [emphasis added]. Therefore, the term

"removable" is a more general term that incorporates two subcategories of

removable aliens - those aliens who were "admitted" and are deportable under

§1227 and those aliens who were not "admitted" and are removable based on

grounds of inadmissibility under §1182.

8 U.S.C. §1227, entitled "Deportable aliens," applies only to those

aliens who are "in and admitted" to the United States. 8 U.S.C. §1227(a).

If the alien has not been "admitted" into the United States, that alien is not

deportable under any of the §1227(a) subsections. 8 U.S.C. §1227(a); 8

U.S.C. §1229a(2) .

In contrast, 8 U.S.C. §1182, entitled "Inadmissible aliens," applies to

aliens without regard to whether the alien has been "admitted" to the United

States. For example, §1182(a) lists classes of aliens who are ineligible for

visas or admission. §1182(a)(2) lists criminal and related grounds of

inadmissibility. An alien who is convicted of, or admits committing, a

criminal ground of inadmissibility is subject to removal under 8 U.S.C.

§1182(a). An alien who was not "admitted" into the United States cannot be

removed from the United States under 8 U.S.C. §1227(a), as a deportable

alien, but can be removed under 8 U.S.C. §1182(a)(2) as an inadmissible alien.

Congress specifically separated removable aliens into two distinct categories - those who have been admitted and those who have not. *Poveda v. United States Att'y Gen.*, 692 F.3d 1168, 1174-75 (11th Cir. 2012). In certain circumstances, an alien who has entered the United States without authorization is treated in a more preferable manner to an alien who entered lawfully on a visa. For example, an alien who entered the United States lawfully and obtained a certain firearm conviction would be deportable under 8 U.S.C. §1227(a)(2)(C), but an individual who entered unlawfully without admission would not be removable under 8 U.S.C. §1182 for the same firearm conviction because §1182 has no corresponding firearm provision.

There are rational reasons that Congress may have decided to treat those aliens who entered lawfully more harshly than those that entered without authorization. First, an alien who enters unlawfully and is without status is inadmissible and removable for that reason alone. 8 U.S.C. §1182(a)(6)(A). Second, an individual who has lawfully entered the United States has entered into an agreement to abide by the terms of the admission. Admission on a specific visa comes with benefits that can include education,

employment, certain federal benefits, potential permanent residency and U.S. citizenship. The Ninth Circuit in *Gonzalez-Gonzalez* recognized that their circuit has upheld statutes where Congress provided greater relief to aliens who entered the United States without authorization as opposed to those who were "admitted." *Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 652 (9th Cir. 2004).

In drafting 8 U.S.C. §1253, Congress specifically incorporated §1227(a), relating to *deportable* aliens who have been admitted to the United States and specifically excluded §1182(a), relating to aliens who have not been admitted to the United States. In separating those who have been admitted (§1227) and those who have not been admitted (§1182), Congress chose to treat aliens differently depending on whether they were admitted or not.

Under the plain language of §1253(a), in addition to proving that the defendant hampered his deportation, the government must prove that the defendant has (1) a final order of removal, (2) that is outstanding, (3) by reason of being a member of any of the classes described in §1227(a). 8 U.S.C. 1253(a)(1). The issue before the Court is to determine the definition of the term "classes" as referred to in §1253(a)(1). The Court must look at the

language itself and if that language is unambiguous, the Court need look no further and the inquiry ends. *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999). Additionally, the courts cannot rewrite statutes that the courts determine were poorly written. *United States v. Nix*, 438 F.3d 1284, 1285 (11th Cir. 2006).

Congress did not define "classes" in §1253 and therefore we interpret the word consistent with its ordinary meaning. *United States v. Garcon*, 54 F.4th 1274, 1276 (11th Cir. 2022). The term "classes" is defined in Merriam-Webster dictionary as "a group, set, or kind sharing common attributes." "Class." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/class.

In order to be a member of any particular class, a person must share common attributes. In each of the subsections of §1227(a), a shared common attribute that makes an alien a member of the class is that the alien is "admitted" to the United States. This is the defining attribute that all aliens falling under §1227 share. If the alien has not been "admitted" to the United States, that alien cannot be a member of any of the classes described in §1227(a).

§1253(a)(1)'s language, which states "any member of any of the classes in section 1227(a)" is plural, which suggests that each of §1227(a)'s subsections are "subclasses" in and of themselves. §1227(a)(1) is a subclass, §1227(a)(2) is a subclass, and §1227(a)(3) is a subclass, and so on. The district court held that the term "classes" in §1253(a) applied to each subsection and did not incorporate the introductory paragraph requirement of §1227(a) that the alien be "in and admitted" to the United States, but rather only incorporated the language of each subsection (1) through (6), finding that each subsection was a self-enclosed class, leaving the "in and admitted" language hovering above the subsections untethered to the sections themselves. Doc 157 at pg. 4.

The district court's interpretation of the term "classes" is too narrow and too far removed from the structure of the statute for multiple reasons. First, an alien cannot be a member of any class within §1227(a) without having been "admitted" to the United States. "Admission" is the defining shared attribute between all members of the classes listed in §1227. §1227(a)'s introductory paragraph states, [a]ny alien (including an alien crewman) in and admitted to the United States, shall, upon the order of the Attorney General, be removed if the alien is within one or more of the

following classes of deportable aliens:" The introductory paragraph incorporates the requirement that the alien be "in and admitted" to the United States into each subsection. Therefore a member of each of the classes within subsections 1 through 3 must be "in and admitted" to the United States in order to be a member of each of the classes within those three subsections. The "admission" requirement is an attribute shared by all members of all classes and subclasses within §1227(a).

For example, 8 U.S.C. §1227(a)(1)(A) states, [a]ny alien who at any time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable." An alien would not be "deportable" under this subsection unless he or she was "in and admitted," to the United States as is required under §1227(a). Therefore, a correct reading of §1227(a)(1)(A) would incorporate that language into the subsection, which would read, " any alien, *in and admitted to the United States*, who at any time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable."

The "in and admitted" language is also incorporated into each of the other subsections listed in §1227(a). This becomes even more apparent by the

last word of each subsection, "deportable."  As discussed above, the word "deportable" relates only to those aliens who have been "admitted" to the United States.  In short, the requirement that an alien be "admitted" to the United States is a common attribute that cannot be excised from §1227(a) as it is the most fundamental attribute that applies to each and every member of each of the classes listed within the §1227(a) subsections.

Second, Congress explicitly included §1227(a) into §1253(a)(1).  Had Congress wanted §1253(a)(1) to apply to aliens who were not "admitted" to the United States, it would not have specifically incorporated members of a class of aliens who have been "admitted."  Congress could have simply added the language, "a member of any of the classes described in section 1227(a) *or section 1182(a)(2)*," or added the language, "*regardless of whether the alien has been admitted*," to §1253(a).

Third, each subsection listed under §1227(a) simply lays out a more specific subclass of members of the more general class of "deportable" aliens. §1227(a), entitled "Classes of Deportable Aliens" lays out the general class membership of aliens who have the common attribute of being "in and admitted to the United States."  §1227(a) then separates the more general class of "deportable aliens" into more specific classes, or subclasses, including

those aliens inadmissible at the time of entry or adjustment of status or who

violate status under §1227(a)(1), those aliens with a criminal offense under

§1227(a)(2), those aliens who failed to register or falsified documents under

§1227(a)(3), those aliens who are deportable based on security and related

grounds under §1227(a)(4), those aliens who are likely to become public

charges under §1227(a)(5), and those aliens who have engaged in unlawful

voting under §1227(a)(6).   Each one of these subsections creates a more

specific class, or subclass, under the umbrella class of deportable aliens

defined in §1227(a) as aliens who have been "admitted" to the United States.

## §1253(a)'s Penalty Enhancement Provision

Counsel is unaware of any Eleventh Circuit or any other circuit court

opinions interpreting §1253(a)(1)'s definition of the term "classes."  This

Court has tangentially dealt with this issue in an unpublished decision in 2009.

In *United States v. Sarwar*, 353 Fed. Appx. 347 (11th Cir. 2009), Mr. Sarwar

challenged a different, but similar provision within §1253.  Mr. Sarwar was

sentenced to an enhanced penalty under §1253(a)(1) pursuant to the penalty

provision that states that a defendant "shall be fined under title 18, or

imprisoned not more than four years (or 10 years if the alien is a member of

any of the classes described in paragraph (1)(E), (2), (3), or (4) of section 1227(a) of this title), or both." Id. at 347.

Mr. Sarwar argued that the government failed to prove that he was a member of any class described in paragraph (1)(E), (2), (3), or (4) of section 1227(a) because it failed to prove that he had been "admitted" to the United States under 8 U.S.C. §§1227(a)(2)(A)(iii) and (a)(2)(C). Id. at 349. §1227(a)(2)(A)(iii) relates to an alien who is convicted of an aggravated felony *at any time after admission*. §1227(a)(2)(C) relates to an alien who *at any time after admission* is convicted of a firearm offense. Unlike Mr. Doe's case, Mr Sarwar's attorney conceded that Mr. Sarwar had been admitted to the United States on at least one occasion. Id. at 350. The Court held that Mr. Sarwar's attorney's concession to being "admitted" to the United States was binding and therefore the enhanced penalty was properly applied. Id. at 351.

In *Sarwar,* the parties and this Court presumed that the enhanced penalty applied only to those aliens who obtained an aggravated felony at any time after admission, under a plain reading of the text. This is another indication that Congress intended to treat those aliens who have been admitted differently from those who have not been admitted. Under the district court's interpretation of the statute, §1253(a) would apply to those who have been

admitted and those who have not.  However, an alien who committed an aggravated felony but had not been admitted (i.e. entered unlawfully) would not be subject to the enhanced penalty, but an alien who committed an aggravated felony after lawful admission into the United States, would be subject to the enhanced penalty.   Why would Congress apply the statute to all aliens, whether admitted or not, but then enhance the penalty for aliens who entered lawfully and not those that entered unlawfully?  Such are the pitfalls of reading the tea leaves of congressional intent, which highlights the efficacy of  employing the plain meaning canon of statutory construction and leaving to Congress the task of drafting and redrafting legislation to effect its own intent.

## Cancellation of Removal Statute

Mr. Doe's interpretation of the statute is also consistent with circuit court interpretations of similar statutes, including 8 U.S.C. §1229b, relating to cancellation of removal.  8 U.S.C. §1229b(b)(1)(C) allows the Attorney General to cancel an alien's removal if, among other things, the alien "has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title…"

In *Gonzalez-Gonzalez*, the defendant argued that only convictions under 1182(a)(2) applied to him because he had not been "admitted," to the United States and therefore wasn't deportable under §1227. *Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 650 (9th Cir. 2004). The Ninth Circuit focused on the "convicted of an offense described under" language of the statute and determined that the language simply cross-referenced a list of offenses that disqualified an alien from cancellation of removal. Id. at 652. In contrast, §1253(a) does not incorporate an "offense" from §1227(a), but rather refers to "a member of any of the classes described in section 1227(a)..." §1253(a)'s incorporation language is far broader than §1229b and it refers to a member of a class that shares the common attribute of having been admitted to the United States. §1229b refers only to the offenses listed in §1227(a).

### Expedited Removal Statute

In *Valdiviez Hernandez v. Holder*, 739 F.3d 184 (5th Cir. 2013), the Fifth Circuit addressed 8 U.S.C. §1228(b), the expedited removal statute, which authorizes the Attorney General to, "in the case of an alien described in paragraph (2), determine the deportability of such alien under section 1227(a)(2)(A)(iii) of this title (relating to conviction of an aggravated felony) and issue an order of removal…" Mr. Valdiviez Hernandez was subjected to

removal pursuant to §1228(b), despite not having been "admitted" into the United States and therefore not subject to deportation under §1227(a)(2)(A)(iii). *Id.* at 188.

Mr. Valdiviez Hernandez argued on appeal that 8 U.S.C. §1228(b) did not apply to him because he had not been "admitted" to the United States, which is required to be deportable under §1227(a)(2)(A)(iii). *Id.* In rejecting this argument, the Ninth Circuit found that despite the plain language of the statute, the Ninth Circuit believed the more logical approach and the popular approach with other circuits[1] was to expand the text to coincide with Congress' perceived intent. *Id.* at 189. As the Court stated, "[s]uch unanimity indicates the common-sense approach to the outcome each court reached. Id. Even so, we are not immune, as likely neither were the other circuits, to the logical appeal of a textual argument that Congress limited the applicability of expedited removal under §1228(b)(1) to the terms of the statute it incorporates by reference, namely, §1227(a)(2)(A)(iii). *Id.*

Despite making no specific finding that the plain text of §1228(b) was ambiguous, the Court looked past the plain text of the statute and determined

---

[1] Zepeda v. Holder, 446 F.App'x 562, 563 (4th Cir. Sept. 15, 2011), G.S. v. Holder, 373 F.App'x 836, 847 (10th Cir. Apr. 15, 2010), Bamba v. Riley, 366 F.3d 195, 198 (3rd Cir. 2004); Bazan-Reyes v. I.N.S., 256 F.3d 600, 605 (7th Cir. 2001).

that the court's interpretation of congressional intent justified the judicial rewriting of §1228(b) to effectively state, the Attorney General may "in the case of an alien described in paragraph (2), determine the *removability[2]* of such alien under section 1227(a)(2)(A)(iii) of this title (relating to conviction of an aggravated felony) *irrespective of whether such alien was admitted to the United States*, and issue an order of removal…" *Id.* This type of judicial statutory rewriting has been specifically rejected by the Supreme Court, which has stated that "this Court is not free to "rewrite the statute" to the Government's liking.". *Nat'l Ass'n of Mfrs. v. DOD*, 138 S.Ct. 617, 629 (2018); see also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2016).

Furthermore, the congressional intent to streamline the administrative removal procedures for aggravated felons that was relied on by the *Valdiviez Hernandez* court is also absent in the context of §1253(a), which relates to a criminal charge of hampering deportation. Finally, the *Validiviez Hernandez* court relied, at least in part, on deference to the Department of Homeland Security's regulatory interpretation of the statute. *Id.* at FN 2. This Court is addressing a criminal statute as opposed to an administrative immigration

---

[2] The Ninth Circuit recognized that the word "deportability" in §1228(b) was inconsistent with its decision. "We accept that using the word "removability" would have fit better with our interpretation of §1228(b), but we do not agree that the word choice overcomes all the contrary indication of the breadth of coverage." *Valdiviez Hernandez,* 739 F.3d 184 at FN 2.

statute and no *Chevron* deference to agency interpretation exists in Mr. Doe's case. *Chevron U.S.A. Inc. v. NRDC Inc.*, 467 U.S. 837, 842-43 (1984).

## Rule of Lenity

Although it is Mr. Doe's contention that §1253(a) is unambiguous, to the extent that this Court determines that the statutory language in §1253 is ambiguous, the rule of lenity requires a reading of the statute consistent with Mr. Doe's position. Where a criminal statute is ambiguous, the rule of lenity requires a court to construe the ambiguous language in favor of the accused. *United States v. Wright*, 607 F.3d 708, 716 (11th Cir. 2010).

## CONCLUSION

The district court erred in denying Mr. Doe's Rule 29 Motion for Judgment of Acquittal and erred in denying Mr. Doe's requested jury instruction requiring the government to prove that he was "admitted." The plain text of 8 U.S.C. §1253(a) is unambiguous and incorporates members of classes described in §1227(a), which apply only to aliens "admitted" into the United States. Because the plain text of §1253(a) is unambiguous, the Court should end the analysis there and should not attempt to determine congressional intent. The government failed to prove that Mr. Doe had been

admitted to the United States, therefore, Mr. Doe's convictions should be reversed.

Respectfully submitted,

*/s/ Jeremy Lasnetski*
Jeremy Lasnetski, Esquire
Florida Bar No.: 512524
121 W. Forsyth St., Ste. 520
Jacksonville, FL 32202
Telephone: (904) 642-3332
Facsimile: (904) 685-4580
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,612 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Appendix has been furnished to Germaine Seider, Assistant United States Attorney, 400 N. Tampa St., Ste. 3200, Tampa, FL 33602 by CM/ECF Filing, which will automatically send a copy of this document on this 26th day of April, 2023.

*/s/ Jeremy Lasnetski*
Jeremy Lasnetski, Esquire
Counsel for Appellant
Florida Bar No. 512524
